IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| JARED J. REARY<br>1243 Tracy Lane<br>Hillsboro, MO 63050<br><br>           Plaintiff,<br><br>           v.<br><br>MARK T. ESPER, in his official capacity as<br>United States Secretary of Defense;<br>1000 Defense Pentagon,<br>Washington, DC 20301-1000<br><br>KENNETH BRAITHWAITE, in his official<br>capacity as<br>United States Secretary of the Navy;<br>1000 Navy Pentagon<br>Washington, DC 20350-1000<br><br>BOARD FOR CORRECTION OF NAVAL<br>RECORDS<br>701 S. Courthouse Road<br>Building 12, Suite 1001<br>Arlington, VA 22204-2490<br><br>           Defendants. | Case No. (To be assigned)<br>Judge (To be assigned) |

**COMPLAINT**

1.      This is an action for declaratory and injunctive relief brought by Jared R. Reary ("Plaintiff" or "Reary") against Mark T. Esper, in his official capacity as United States Secretary of Defense, the Board for Correction of Naval Records ("BCNR"), and Kenneth Braithwaite, in his official capacity as the United States Secretary of the Navy (collectively, the "Defendants"). As discussed below, the Defendants erred when they denied Plaintiff's application to the BCNR seeking disability retirement status and a combined disability rating of at least 30% for Plaintiff's medical disabilities. The BCNR decision was arbitrary, capricious, contrary to law, and

1

unsupported by substantial evidence.  Specifically, the BCNR ignored evidence that Reary's Major Depressive Disorder made him unfit for service and warranted at least a 70% disability rating, which would in turn entitle Reary to a medical retirement from the Navy.  The BCNR's error deprived Reary of a higher disability rating and thus the stature and benefits that flow from being designated as a military retiree.

2. Mr. Reary joined the Marine Corps in February 2010, serving as a Heavy Equipment Operator.  He deployed to Afghanistan for seven months in 2011 with a combat engineer battalion and was subjected to multiple improvised explosive device (IED) blast exposures while traveling in convoys during his deployment.  After his return, Mr. Reary suffered from major depression, which made it extremely difficult for him to interact with others, concentrate, make decisions, or complete tasks, and significantly impaired his memory.  A Department of Veterans' Affairs ("VA") mental health screening confirmed his major depression and assigned him a Globalized Assessment of Function ("GAF") score consistent with "serious" impairment in social and occupational functioning based on the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR").  Due to these impairments, in January 2013 Mr. Reary's treating military mental health professional placed him on limited duty, which prevented him from handling weapons, participating in field training, accessing firearms, and from performing overnight duty.  In other words, due to restrictions based on his mental health conditions, Mr. Reary could not perform the basic duties of a Marine or of his military operational specialty ("MOS") as a Heavy Equipment Operator.

3. Despite these impairments diagnosed by multiple mental health professionals, the Navy referred Mr. Reary to the military's Disability Evaluation System ("DES") in 2013 only for an unrelated shoulder injury, and subsequently medically separated Mr. Reary with a 10 percent

disability rating for that shoulder injury alone. Not only did the Navy fail to refer Mr. Reary for his mental health condition, but it also gave no consideration as to whether his mental health conditions were duty limiting or unfitting during the Medical Evaluation Board ("MEB") and Physical Evaluation Board ("PEB") portions of his DES proceedings, violating the requirement that the Navy PEB consider all known medical conditions in the DES process. Had the Navy properly considered Mr. Reary's well-documented mental health conditions which prevented him from carrying a weapon or performing the duties of his military occupational specialty ("MOS"), he would have been medically retired based on these conditions rather than merely separated.

4. In 2018, Mr. Reary applied to the Board for Correction of Naval Records (the "Board") to correct his records by awarding him the medical retirement status that he should have received in 2013. In that application, he argued that the Navy violated his rights by not referring him to the Navy's DES for his mental health conditions and not considering his mental health conditions in the DES process. He further argued that, if the Navy had done so, he would have been awarded disability retirement.

5. The Board, however, denied his application for relief. The Board inferred that the Navy's error, the lack of consideration of Mr. Reary's major depression in the DES process, was evidence that the Navy had affirmatively decided that his mental health was not unfitting, bootstrapping the same error for which Mr. Reary sought relief into a reason to fail to correct it. The Board also concluded that Mr. Reary's mental health condition was not unfitting by pointing to the fact that Mr. Reary could continue to perform the tasks assigned to him as part of his limited duty, ignoring the statutory law that requires each military branch, including the Navy, to make fitness determinations by evaluating whether a service-member is able to perform the

duties expected of their grade and MOS.  The Board also refused to consider the VA's finding of significant impairment based on the DSM-IV-TR, despite binding DOD regulations requiring the DES to follow the diagnosis system specified by the DSM-IV-TR.

6. Mr. Reary now sues to right this wrong.  For the reasons explained below, the Board's refusal to grant Mr. Reary the relief he sought in 2018 was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.  Mr. Reary is entitled to relief.

## NATURE OF THE ACTION

7. This is an action under the Administrative Procedure Act for equitable relief in the form of the correction of Mr. Reary's military records to reflect a medical retirement.

8. At the time of Mr. Reary's separation, binding Department of Defense and Navy regulations—DODI 1332.28, Enc. 3, ¶ 1.2.3 and SECNAVINST 1850.4E, Encl. 8, ¶ 2j—required the Navy to "document the full clinical information of all medical conditions the Service member has and state whether each condition is cause for referral into the DES."  Despite the fact that Mr. Reary had a documented mental health impairment due to major depression at the time of his separation, the Navy failed to document this condition and state whether the condition was cause for referral into the DES.  The Board compounded this error by failing to award Mr. Reary a medical retirement or at minimum remand the case for DES processing following the regulation.

9. Department of Defense and Navy regulations, including DODI 1332.38, ¶ E4.13 and SECNAVINST 1850.4E, ¶ 8013(a)(2), also required the Navy to follow the diagnosis system specified by the DSM-IV-TR, including the GAF diagnosis system.  The Board nevertheless ignored the VA's findings of serious impairment according to the DSM-IV-TR entirely on the basis that VA findings are used for a different purpose than separation findings.  The Board's decision to ignore the VA findings *entirely* also was in error, because a "VA rating

4

decision should not be disregarded by the BCNR" and "should be weighed by the BCNR, together with all other evidence…" *Bosch v. United States,* 27 Fed. Cl. 250, 265 (Fed. Cl. 1992); *see also Jordan v. United States,* 205 Ct. Cl. 65, 80 (Ct. Cl. 1974) (using VA ratings decision as evidence to find service member was unfit for duty).

10. The Board also erred by relying on evidence of Mr. Reary's ability to perform limited duty— even when restricted from carrying a weapon, performing field duty, or performing duties in his MOS— to deny his application. The Navy was required by DODI 1332.18, Enc. 3, Appx. 2, ¶¶ 2, 4 to consider whether Mr. Reary was "unable to perform the duties of his office, grade, rank, or rating" including his ability to perform common military tasks, his deployability, and special qualifications.

11. Each of these failures rendered the Board's decision arbitrary and capricious, unsupported by substantial evidence, and contrary to law. Mr. Reary is entitled to relief.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action under 28 U.S.C. § 1331 because this case raises federal questions under the Administrative Procedure Act, 5 U.S.C. § 702 *et seq*. Plaintiff also seeks relief under the Declaratory Judgment Act, 28 U.S. C. §§ 2201, 2202.

13. Plaintiff seeks solely equitable relief in this action, namely, a correction of his military record to reflect medical retirement status.

14. Plaintiff sought relief for this issue before the BCNR, which was denied.

15. Review of the BCNR's decision with respect to Plaintiff's request to be placed into medical retirement status is appropriate because the ruling was a final agency action for which there is no other adequate remedy in a court. *See* 28 U.S.C. § 704.

16. Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because a Defendant resides in this judicial district. Venue is also proper under 5 U.S.C. § 703 because this is a Court of competent jurisdiction.

17. In accordance with 28 U.S.C. § 2501, this action is brought within six years of the BCNR's decision denying relief.

## PARTIES

18. Plaintiff Jared Reary is a citizen of the United States, and a resident of Arnold, Missouri. Mr. Reary served in the U.S. Marine Corps beginning in 2010. Mr. Reary served in Afghanistan and was honorably discharged from the Marine Corps in May 2013.

19. Defendant Esper is the United States Secretary of Defense. He is the chief officer of the Department of Defense, and exercises authority, direction and control over the Department of Defense. Upon information and belief, defendant Esper performs a significant amount of his official duties within this judicial district.

20. Defendant BCNR is an agency of the Department of the Navy. The BCNR is located in Arlington, VA.

21. Defendant Braithwaite is the United States Secretary of the Navy. He is the chief officer of the Department of the Navy, and exercises authority, direction and control over the Department of the Navy. Upon information and belief, Defendant Braithwaite performs a significant amount of his judicial duties within this judicial district.

## FACTUAL ALLEGATIONS

I. **Military DES Process.**

22. Chapter 61 of Title 10 of the United States Code establishes the process through which the Navy discharges disabled sailors and Marines. It authorizes the Secretary of the Navy to separate a member of the Navy when it determines that the member is "unfit" to perform the

duties of his or her office, grade, rank, or rating due to physical or mental disability. This chapter also provides the Secretary with broad discretion to design the regulations for determining fitness. 10 U.S.C. § 1216(a)–(b).

23. Secretary of the Navy Instruction 1850.4E establishes the Navy DES under the provisions of Title 10, United States Code, Chapter 61 and DoDI 1332.38.

  **A.** **DES Referral.**

24. When a Navy service member becomes wounded, ill, or injured, an attending physician at a medical treatment facility will assess and treat the member.

25. If a wound, illness, or injury results in a permanent condition or has long-lasting effects, a service member is referred to the DES by an attending physician.

26. DoDI 1332.38, E3.P1.6.1 requires DES referral within one year from the date of diagnosis of a service member's medical condition where that medical condition renders the service member unable to return to full military duty.

  **B.** **MEB Phase.**

27. After a service member's referral to the DES, a Medical Evaluation Board ("MEB") convenes to document the service member's full clinical medical history. See DoDI 1332.38, E3.P1.2.3. A service member's clinical history must include his or her "medical history, appropriate physical examination, medical tests and their results, medical and surgical consultations as necessary or indicated, diagnoses, treatment, and prognosis." Id.

28. The MEB is charged with determining whether any of the service member's mental or physical conditions fail the retention standards set forth by the service member's particular military branch. See DoDI 1332.38, E4.A1.1.2.11.2. If the MEB decides that none of the service member's medical conditions fail medical retention standards, the member is returned to full duty. If the MEB decides that one or more of the service member's medical conditions

fail(s) medical retention standards, the member is referred to a Physical Evaluation Board ("PEB"). See DoDI 1332.38, E4.A1.1.2.11.4. Navy and Marine Corps service members have the right to appeal an MEB's decision.

### C. PEB Phase.

29. Upon referral from a MEB, the PEB determines the fitness of the service member's medical conditions, finding those conditions unfit when they leave the service member unable to reasonably perform the duties of his or her office, grade, rank or rating. See DoDI 1332.38, E3, P3.2.1.

30. The PEB process has four possible outcomes. A service member can be found: (a) fit for duty; (b) unfit for duty but ineligible for disability benefits because, among other reasons, the disabling condition was not incurred in the line of duty, existed prior to service, was the result of intentional misconduct or willful neglect, or was incurred during an unauthorized absence; (c) unfit for duty and eligible for medical retirement with monthly disability retirement pay and other benefits; or (d) unfit for duty and eligible for medical separation with disability severance pay.

31. If a service member is found unfit and eligible for disability benefits (i.e., under outcomes (c) or (d) above), then the PEB must assign a percentage disability rating for each unfitting condition. A PEB's disability rating controls the amount of military benefits and services to which the service member is entitled upon discharge. The rating, when above 30 percent, dictates that a service member is "medically retired" with monthly disability retirement pay and other benefits, such as lifetime healthcare coverage and military commissary and exchange privileges (i.e., outcome (c) above); when below 30 percent, the service member is "medically separated" with a one-time lump sum severance payment and no additional benefits (i.e., outcome (d) above). See 10 U.S.C. § 1201.

32. Title 10 of the U.S. Code and the rules of each of the service branches have long mandated that the armed forces follow the Veterans Affairs Schedule for Rating Disabilities ("VASRD") when rating the disability of service members found unfit for duty due to physical or mental disability. See 10 U.S.C. §§ 1201, 1203; National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-118, § 1642(a), 122 Stat 465, codified at 10 U.S.C. § 1216a.

33. A service member found unfit may appeal the PEB's decision in writing and in person at a formal hearing with legal representation. See DoDI 1332.38, E3.P1.3.3.4–3.3.5. A service member found fit for duty is not entitled to a formal PEB since a finding of fit does not cause involuntary separation for a physical disability. See DoDI 1332.38, E3.P1.3.3.1.2.

**II.     Facts of Mr. Reary's Case.**

    **A.     Initial Service**

34. Mr. Reary served honorably on active duty in the U.S. Marine Corps from February 22, 2010 to June 12, 2013.  Mr. Reary served as an Engineer Equipment Operator.  Mr. Reary deployed to Afghanistan with the 2nd Combat Engineer Battalion (CEB) in support of operation Enduring Freedom from January 24, 2011 to August 13, 2011.  He deployed to Afghanistan despite injuring his shoulder in an off-duty accident shortly before reporting to 2nd CEB.  While serving in Afghanistan, Mr. Reary experienced multiple blast exposures, including nine total IED explosions, one of which struck the vehicle in front of him.  Mr. Reary's awards for his active duty service included the Navy Unit Commendation, Good Conduct Medal, and Afghanistan Campaign Medal with gold star, and NATO Medal- ISAF Afghanistan.

    **B.     Return to U.S. and Post-Deployment Medical Assessment and Treatment**

35. After Mr. Reary returned from his deployment, he experienced severe difficulty sleeping, concentrating, and making decisions, as well as fatigue and memory lapses.  These symptoms made it "extremely difficult" to do his work, take care of things, or get along with

other people. Additionally, after returning from deployment, Mr. Reary experienced feelings of depression or hopelessness "nearly every day." Mr. Reary repeatedly sought medical treatment for his depression and insomnia throughout the time period from his return from deployment until his separation. After his return from deployment, Mr. Reary was prescribed anti-depressants for his MDD.

36. Although he received behavioral health treatment and medication, Mr. Reary's depression repeatedly interfered with the performance of his duties. While Mr. Reary had a "clean record" until his return from his deployment, after his return from Afghanistan, he began to receive repeated negative counselings for tardiness and his proficiency and conduct marks declined. Notably, Mr. Reary's treating mental health provider recommended in January 2013, *inter alia*, that Mr. Reary be given "no access to firearms."

  **C.** **Separation Through the DES Without Consideration of Mental Health Conditions**

37. Due to Mr. Reary's chronic depression as well as his shoulder injury, Mr. Reary's Medical Case Manager and Unit Medical Officer recommended that he be referred to the Wounded Warrior Battalion, East (WWBE). While Mr. Reary was assigned to WWBE, Mr. Reary was referred into the DES process only for his shoulder condition. On February 1, 2013, Mr. Reary's MEB recommended referring his case to the Physical Evaluation Board for fitness for duty determination, with the opinion that Mr. Reary's shoulder injury interfered with the performance of his assigned duties. The MEB's sole member was Mr. Reary's orthopedic surgeon, who had previously treated Mr. Reary only for his shoulder injury. Although Mr. Reary's electronic medical history showed that he was experiencing chronic depression and taking antidepressants, that his medical history was "otherwise remarkable for mood disturbance," and that his mental health care provider had recommended that he be restricted

10

from carrying a weapon, the MEB did not consider or make any finding regarding his mental health conditions. As a result, Mr. Reary was referred to the PEB only for his shoulder injury (chronic right AC separation).

38. As part of his MEB, Mr. Reary's commander wrote in his non-medical assessment that Mr. Reary's health conditions made him "unable to carry on MOS missions." Mr. Reary's commander made it clear that it was not just his shoulder that left him unable to perform the tasks of his MOS, stating that Mr. Reary required "supervised direction to complete tasks," and that he had "personal issues" that "continuously interfere(d) with his daily duties." Mr. Reary's commander further reported that Mr. Reary was "unable to deploy in his current condition" and "cannot perform field duty status for his military occupational specialty."

39. On February 14, 2013, as part of the DES process, a clinical psychologist performed a compensation and pension examination (CPE) of Mr. Reary for mental disorders. Mr. Reary's CPE report confirmed that his major depressive symptoms started during his deployment in August 2011 because of "bad things that happened while he was on deployment." Mr. Reary's symptoms included continual depressed mood, diminished interest in almost all activities, insomnia, psychomotor agitation, continual fatigue, feelings of worthlessness or guilt, social withdrawal, irritability, difficulty concentrating, anxiety, and memory loss. Mr. Reary's CPE also documented that he began to experience recent and immediate memory impairments after exposure to multiple IEDs and a vehicle accident while deployed, including trouble following conversations, misplacing items, trouble with sustained concentration, distractibility and "blank[ing] out a lot." (Id. at 6.) Mr. Reary's symptoms, including his anxiety and cognitive difficulty, interfered with his work and social activities.

40. Mr. Reary's examining physician confirmed that he met DSM-IV-TR criteria for Moderate to Severe Major Depressive Disorder and assigned him a Global Assessment of Function (GAF) score of 42, consistent with "serious symptoms" or "serious impairment in social, occupational, or school functioning." Specifically, the CPE provided that Mr. Reary's symptoms caused him to lose focus, lose things, forget important things, have difficulty changing sets and problem sets, and "become overwhelmed if asked to do too much thinking."

41. The PEB met for the first time on March 25-26, 2013. Despite the CPE findings reflecting Mr. Reary's moderate to severe MDD and low GAF score, the PEB's worksheet indicates that it only considered Mr. Reary's shoulder injury, which it found unfitting, and contains no reference to his mental health conditions or the CPE findings.

42. After the PEB's initial findings, the VA issued a Proposed Rating Decision (PRD) on April 3, 2013. The PRD proposed rating Mr. Reary's right AC separation with a 10% disability rating under the VASRD. The PRD further proposed rating Mr. Reary's MDD as service-connected with a 70% disability rating, among other conditions, totaling a 90% disability rating.

43. The PEB applied the VA's rating of 10 percent to Mr. Reary's right AC separation, causing him to receive only a medical separation with a severance payment, not a medical retirement.

44. After Mr. Reary's separation, the VA confirmed his 70% disability rating for MDD. In 2015, Mr. Reary underwent a follow-on CPE for mental health. Based on his follow-on CPE, the VA continued Mr. Reary's 70% rating for MDD, and recognized his insomnia with "persistent day-time hypersomnolence" for the first time with a 30% rating, retroactive to Mr. Reary's separation from the Marine Corps on June 30, 2013.

**D.     Application to the Board for Correction of Naval Records and Denial of Relief**

45.     In April 2018, after struggling with his medical conditions for several years, Mr. Reary sought a correction of his military records from the Board for Correction of Naval Records to reflect that both his right AC separation and his major depressive disorder were unfitting conditions at the time of his discharge and that his medical separation be changed to a medical retirement status based on the combination of unfitting conditions.

46.     In a letter accompanying his application to the Board, Mr. Reary presented his case, highlighting, among other things, the fact that the MEB and PEB failed to consider his mental health conditions, including the "serious" impairment found by the VA and his inability to carry a weapon or perform the duties of his MOS.

47.     On May 14, 2019, the Board denied Mr. Reary's application in a two-page letter. The Board reconsidered Mr. Reary's application due to the fact that the Board relied on advisory opinions from the Secretary of the Navy Council of Review Boards (CORB) which were not received by Mr. Reary or his counsel prior to the original decision.  However, after reopening the case to enable Mr. Reary to respond to the CORB advisory opinions, on November 25, 2019, the Board again denied Mr. Reary's application based on substantially identical reasoning.

48.     Both Board decisions repeated the same series of errors.  In both cases, the Board explicitly relied on Mr. Reary's ability to perform administrative tasks on limited duty in garrison as an indication of fitness for duty and dismissed his mental health-based restrictions on carrying a weapon, deploying, or performing basic duties of his MOS.  Additionally, in both decisions the Board relied on the absence of a referral to the DES for mental health conditions as evidence that Mr. Reary's mental health providers had affirmatively decided not to refer him to the DES for such conditions.  The Board also dismissed the severity of Mr. Reary's MDD found

13

by the VA on the rationale that VA disability ratings do not require unfitness for service, but failed to consider whether the serious degree of impairment found by the VA was itself evidence of unfitness.

## COUNT I- VIOLATION OF ADMINISTRATIVE PROCEDURE ACT (5 U.S.C. § 706(2)(A)

49. Mr. Reary re-alleges and incorporates by reference each of the foregoing paragraphs as if set forth in their entirety herein.

50. Mr. Reary has exhausted his administrative remedies at the Navy.

51. The BCNR acted arbitrarily and capriciously by rejecting Mr. Reary's argument that the Navy erred by failing to refer him to the DES process, for well-documented serious impairment due to mental health conditions, despite the Navy's own regulations requiring the consideration of all known medical conditions through the DES process.

52. The BCNR acted arbitrarily and capriciously by focusing on Mr. Reary's fitness for administrative tasks in garrison, despite the Navy's own regulations requiring the consideration of Mr. Reary's ability to carry a weapon, deploy, and perform the basic requirements of his MOS due to his mental health condition.

53. The BCNR acted arbitrarily and capriciously by relying on the failure of the Department of Navy to refer Mr. Reary to the DES process for mental health conditions as evidence that his mental health providers made an affirmative decision that those conditions did not warrant referral.  Had the evidence been properly considered, Mr. Reary's major depressive disorder should have been found unfitting.  No evidence to the contrary was presented—unless the BCNR improperly considered the absence of evidence as affirmative evidence—and therefore the preponderance of the evidence clearly supported the relief sought by Mr. Reary.

54. The BCNR acted arbitrarily and capriciously by ignoring the severity of Mr. Reary's mental health conditions as found by the VA, including the relevance of the severity of those conditions to Mr. Reary's fitness for service (e.g. ability to carry a weapon, deploy, or perform duties of his MOS).

55. Plaintiff Reary has suffered a legal wrong as a result of the BCNR's arbitrary and capricious decision, because he was deprived of his right to a meaningful review from the BCNR. The BCNR's incorrect decision caused Reary to remain with the stigma of medical separation from the Navy. This means Reary was deprived of a discharge status that his serious disability and honorable service warrant—medical retirement.

56. Plaintiff Reary served his country honorably. He volunteered to serve our country in a time of great need and risked his life to assist the Navy in dangerous and important operations in Afghanistan.

57. Awarding Plaintiff Reary medical retirement status would correct the injustice caused by the BCNR's arbitrary and capricious decision of approving the PEB's earlier determination.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jared R. Reary prays that this Court enter judgment against Defendants and grant the following relief:

a) Find that the BCNR's determination was arbitrary and capricious, unsupported by substantial evidence, and contrary to law;

b) Order Plaintiff's military records— including without limitation his DD Form 214 and his retirement orders— be corrected to reflect a permanent medical retirement with a disability rating of at least 70%;

c) Declare that the BCNR has violated the Administrative Procedures Act;

d) Award Plaintiff interest, costs, and attorneys' fees; and

e) Grant such other and further relief as the Court deems just and proper.

Dated: October 19, 2020

Respectfully submitted,

By: _s/ Caroline M. Mew_
Jon B. Jacobs (D.C. Bar #142249)
Caroline M. Mew (D.C. Bar #467354)
PERKINS COIE LLP
700 13th Street, NW, Suite 800
Washington, DC 20005
Telephone: 202.654.1758
Facsimile: 202.624.9535
JBJacobs@perkinscoie.com
CMew@perkinscoie.com

Evan S. Day
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: 858.720.5700
Facsimile: 858.720.5799
EDay@perkinscoie.com
*Pro Hac Vice To Be Filed*

Howard R. Cabot
Raj Gangadean
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012
Telephone: 602.351.8000
hcabot@perkinscoie.com
RGangadean@perkinscoie.com
Attorneys for Applicant
*Pro Hac Vice To Be Filed*

National Veterans Legal Services Program
Barton Stichman DC Bar ID: 218834
Rochelle Bobroff DC Bar ID: 420892
Esther Leibfarth NY Bar No. 820890
1600 K Street, NW, Suite 500
Washington, DC 20006-2833
Telephone: 202.265.8305
16